Good morning, your honors. It's me, Tom Freeman, on behalf of appellant and defendant Dr. Patwardhan. Your honors, the first point that I'd like to focus on is the exclusion of the expert testimony of Patrick Egan, who was going to testify to the jury about the widespread confusion in the state, in the area of rules concerning the importations of foreign medications. And he was going to tell the jury, and in fact, during the opening statement, the jury was told that this expert witness would tell them that there is a common misunderstanding in the public in general, based on a number of factors, but a very common misunderstanding that if you import foreign medications for legitimate medical purposes, that's okay, that that doesn't violate the law. And the reason that that is so critical in this case is because this case is basically just about intent. Dr. Patwardhan... Two different types of intent, counsel. One, there's two different charges generally here. One is the charge of smuggling, bringing into the country medicine which is not allowed to be brought in without fulfilling the FDA regulations. The second one is intent to deceive patients with statements that what they were receiving was FDA-approved American brand name drugs, when that's what they were not receiving. Now, Mr. Egan's testimony as to confusion cannot be relevant to the second count of intentionally deceiving, can it? Yeah, absolutely. Well, first of all, I take exception. Absolutely? Yeah, I take exception, Your Honor. How can a doctor's confusion about whether to bring in drug, drug A, from India or Honduras or wherever, how can Mr. Egan's confusion's testimony as to that be relevant to whether the doctor told his patient, this is drug B approved by the FDA? There was no... There's testimony as to that? Your Honor, that was not charged in this case. Let me take it back. It was charged. No, it was not, Your Honor. It was in the first, it was the first superseding indictment. There was a charge about bringing in an unapproved, an FDA-unapproved drug. That charge was dropped in the case that went to trial, and they charged only misbranding. And misbranding is... 331A and 331A2 with the specific intent to mislead or defraud his patients? Yes or no? With respect to misbranding. Yes. But misbranding, and that's a big, that is the charge that must be shown to have been animated by a specific intent to defraud. Right. And that misbranding does not apply to the... It's not about information that is communicated between a doctor and a patient with respect to prescription drugs. We're dealing here with the FDA Act, which, as the Court in Ephros said, is an act that has very specific terms that have a whole history of definition. And the term adequate directions for use does not mean what you might assume it means if you have not reviewed the FDA regulations. Well, look, we're told, if you read these regulations or you look at the statute, that prescription drugs are, per se, misbranded. Then you've got to, that doesn't mean that all of them are misbranded and have moved through interstate commerce illegally. You have to look at, you have to fall within one of two exceptions to be exempt. Isn't that the way it works? No, according to... I asked you a question. Is that the way it works? No, I don't believe it does. Okay, tell me why it doesn't work that way. Because the courts have determined that with respect to prescription drugs, the duty goes to, there is a duty, and there's a duty to avoid, to make sure that you've provided adequate directions for use. However, that duty, with respect to prescription drugs, is only owed to a prescribing physician. Because adequate directions for use means the type of medical information, type of scientific information needed in order to make a medical decision about whether or not to prescribe a drug. And so that has to do with what are the side effects, what does it go with, what will happen if you take it. There is no such thing as adequate directions for use of a prescription drug being given to a patient. Because a patient cannot make that type of a medical decision. And that is why the Evers case is critical. Because they said, putting aside those exceptions that you just read, there is a duty to provide adequate directions for use. Well, look, Evers, which is a Fifth Circuit case, he was charged with misbranding under a different provision of the statute. He was charged with... Is that right or wrong? That is not correct. He was charged with a violation under one of the two provisions that Dr. Pat Warden was charged with. Well, he was charged under Section 331K. I'm sorry, for the interstate commerce element. Evers. Yes. And then Evers, in Evers' situation, 331K prohibits causing a drug to become misbranded while held after shipment in interstate commerce. Now, this drug was not, the one involved here, was not in interstate commerce. That's true. So Evers doesn't apply. Well, Your Honor, I would say that's a distinction without a difference here. I heard that expression used when I was in junior high school, and I never could figure that out.  Well, I guess, so I'll be clear and not sound too flip about this, the duty, whether or not the duty applies to the patient, from the doctor to the patient, doesn't have to do with where the drug was misbranded in the... And then to get away from that, you have to comply with Exception 1 or Exception 2. And Exception 1 tells us that under these regulations, the conditions that must be met for a prescription drug to qualify for an exemption from misbranding include, among others, that the drug is in the possession of someone who can lawfully engage in the dispensing of drugs. The label contains the statement, Rx Only. Was there a label on these? Rx Only? No, Your Honor. No. And the recommended dosage, the route of administration, the amount of each active ingredient, the names of inactive ingredients, if the drug is for oral use, a lot or control number, a statement to the pharmacist indicating the type of container to be used in dispensing the drug, and there are other requirements. How do we meet Exception 1? Your Honor, as I thought I was indicating, we are not relying on either of those exceptions. What we are relying upon is the determination... Okay, but so then we're told that prescription drugs are per se misbranded. Unless they contain adequate instructions for use, they're misbranded. Where is that in the statute? That is under Section C, I believe. Why don't you bring your partner up here? I actually was looking to see if I had the papers. But I guess, Your Honor, what I want to make sure is our argument, I mean, this is one aspect of our argument here, and I don't want to, I mean, we are standing by Evers. We think it's fully applicable. So here's the distinction I see. Evers is, well, it's under a different statute, but the charge in this case is that he knowingly and intentionally, with intent to defraud and mislead, introduced into interstate commerce, meaning that when he brought those drugs into the United States, not when he administered them, but when he brought them into the United States, he brought them in with the intent to defraud and mislead. And so this whole argument about selling to other doctors, to me, is completely irrelevant. Okay, well, given the, I mean, we stand by the arguments we made. I understand. Go to that one and tell me the charge, the count one, that I'm reading it verbatim to you. How does Egan's testimony address that? Well, you have to, for a felony conviction, you have to have an intent to violate the law. And here there's an intent to defraud and mislead. Knowingly, intentionally introduce, and then I think with intent to defraud and mislead, modifies introduce. And so what we're saying in this case is that our client did not intend to introduce a drug that he didn't have a right to bring in, that he believed that although these are foreign medications, that it was You're talking about a right to bring in for his personal use. No, we're not limiting it to that for his use as a physician. So, look, he bought those drugs in another country. He bought them in India, I think. Yes. Okay. Now, when you come in, you have to declare everything. They give you these forms, you know. You have to declare them. Now, did he declare those drugs? No, he did not. Your Honor, how So there's a violation there. Well, Your Honor, but that's He brought them in in a, what, a seed bag or He brought them in completely unconcealed, just in his regular luggage. We included a picture. As soon as you open it up, he was subject to secondary searches, which He was subject, but did he go through one? He went through three of them, and the odds on them not opening There was some testimony that sometimes both bags are not open, but the odds against that are overwhelming, about 88% against that happening. Well, you know, when you go through and you hand them that list, a detailed list of what you purchased, down to a toothbrush, they look at that, and they'll just wave you on. Well, Your Honor, that's not true. Excuse me, Your Honor, the evidence in this case shows that that is not true, that he was not waved on. He was subjected to searches at least three. I said that if you come in there with a complete inventory of the things you bought, then you have a better chance of having that happen. Now, they don't, you know, you may come in with, how many bags did he come in with? I believe two. Two. I believe so. So how many did they search? Well, we don't know that. I don't believe that information is revealed. However, from the intent point. You just told us that they took them over to secondary and they opened up a bag or two. He was subject to secondary searches. I believe that what is precisely done in any secondary search is not something that he would see, because he's subject to a heightened degree of search. And so there was testimony that some of the agents only opened one of the two bags, but nobody remembers what happened in this case. There was also testimony that I believe that all bags are searched. We don't know, but from an intent, from a knowledge point of view, what we are saying is that our client had good reason to believe that what he was doing was legal. Now, whether or not there could be some kind of a customs violation. Why did he tell his staff, don't use any of these drugs? Don't give them to patients to take home and use. Well, Your Honor, that happened right before, I believe, right before the government came in. He had been told that. Tell me, why wouldn't he declare them on his list if he bought them? Well, Your Honor, I don't know why. Tell me why he didn't declare them. Your Honor, I don't know why he didn't declare them. He may have thought that because they're medications, they don't need to be declared. But, Your Honor, the point is not whether there's sufficiency of evidence to support intent here. The question is whether critical evidence of intent was kept from the jury, and it was kept from. You're talking about the lawyer that was going to testify as to how people believe these laws apply and all this and that? Yes, Your Honor. Well, you know, that is so far-fetched. Well, Your Honor, with due respect, this is – I don't need any due respect from you. I'm telling you it's far-fetched. You know, when I sat on trial courts for 15 years, and to get a lawyer to come up and tell juries what the average person thinks is, you know, a little bit of an outlier instead of far-fetched. I understand what you're saying, and I understand that – Well, let me ask you this. You've got limited time. You're over your time. So you want to finish up? Yes, Your Honor. Okay, let's do it. I'll give you another minute. Thank you, Your Honor. I want to go to this point about the expert because I do think it's critical. We're not dealing with a situation – Look, you've already briefed all that. Yes, Your Honor. Okay, then finally I'll move on to a different point. Move on to something. I'll move on to the broken promise. Your Honor, we told the jury in opening statement, we said not only did Dr. Pat Wharton believe that what he was doing was legal, but he was not the only one. There is a widespread belief, and we told that to the jury. We said to the jury – and to Your Honor, this may not seem like a big deal, but picturing a jury. The jury was told, we have an expert who's going to come in. This expert has spoken before Congress and has explained to Congress that there is a widespread misunderstanding about the legality of bringing in foreign medications. And the jury was expecting to hear that information. And when that information didn't come in – A lot of people go and testify before Congress. Well, you know that, Your Honor, and I know that, but the average juror is going to think that that's a big deal. And not only that, Your Honor, but the fact that there was testimony before Congress about the widespread confusion – Look, look, look. Is this your biggest argument? I think I've been through – Is this your major argument about this expert? Well, this is the broken promise part of that. Broken promise. Okay, and we think that that's critical. Look, you've briefed it. It's adequately briefed. We've all read your brief. And – And thank you, Your Honor. We've got to – we've got a lot of arguments today. Good morning, Your Honor. What are you going to tell us? The government's perspective, Your Honor. Joseph Widman for the United States. May it please the Court. The defendant was charged in count one with a so-called talking count. In other words, there was a fair amount of detail in that count alleging what he did. One of the things that it alleged was that to avoid detection, he misled his patients. That was borne out in the evidence at trial in a number of ways.  But in response to what Mr. Freedman said, did you try this case? Yes, I did with a colleague. So you knew that going into trial, you'd made a motion in limine to keep Mr. Egan's testimony out, right? Yes, we did, Your Honor. It came before the Court. You lost. Egan was going to testify. At that point, the defense made unusual for a criminal case, made an opening statement. Usually, the criminal defense doesn't make an opening statement because they don't quite know where they're going to go until the prosecution rests. But they made an opening statement in reliance upon the judge's ruling that Mr. Egan's testimony was going to come in. And they mentioned Mr. Egan. And Mr. Egan was going to testify that there was public confusion as to what the law was, an element that goes to the intent to introduce drugs knowing that they're illegal. In the middle of the trial, you make a motion for reconsideration. You style it as such. Certain requirements for a motion for reconsideration under the federal rules, those didn't exist. There was no new knowledge. There was no new law. You just said, I want a second chance. And guess what? The judge agrees with you. All of a sudden, the tactic of the defense, based on reliance on Mr. Egan testifying, based on the opening statement where he said that Egan was going to testify, is up in smoke. Now, don't you think that is critical to the defense? And if not, tell me why. Your Honor, we submit that it wasn't critical to the defense. Why? We did make a motion for reconsideration. The court did not grant the motion for reconsideration. No, the court danced around whether it was reconsideration or not. But you styled it as a motion for reconsideration. And what it was was take another look at the same exact motion. You didn't bring in any new law. You didn't bring in any new facts. Right? Your Honor, we brought in the trial record. We brought what had happened up to that point in the trial. Well, but you knew what was going to happen at the trial in the earlier motion. We had some idea, Your Honor. Of course you did. But motions in limine, I mean, they're always sort of tentative. Well, you brought the motion in limine on the basis that this is what's going to happen. We don't want the jury to be prejudiced by hearing irrelevant and incendiary testimony. And you made your record as to how it would harm the prosecution case. Your Honor, we did. So what new facts or law did you bring before the court on the motion of reconsideration? Anything? What was new was that it became obvious that the defendant was not going to present any testimony as to the fact that he was confused or what the reasons were that he was confused. The link wasn't there. And what was new was that that's how it happened. But he was a member of the public, wasn't he? Yes, Your Honor. Well, everyone, according to Egan, everyone is confused by the federal policy. Dr. Patwarden was one of everyone, was he not? Your Honor. That's circumstantial evidence of confusion which the jury could accept. Right? No, Your Honor. Why couldn't it accept it? Because although he's a member of the general public, he's a doctor with 30 years of experience treating cancer patients. to be confused as a member of the general public and also as a doctor. It's cumulative evidence, circumstantial evidence of confusion. Your Honor. It may not impress you, and it didn't impress the court. The court said, I don't think you need this evidence. Is that the function of the trial court? To tell the defense whether you need the evidence? Isn't the function of the trial court to rule whether it's admissible or not? Yes. And is one of the reasons that it's not admissible because the judge feels, you don't need it? Because there's no evidence to believe it's relevant. That's the reason it was excluded. And we submit, they were going to have a criminal defense lawyer. Why isn't it relevant? Because it's not relevant. It's not relevant because there was no evidence to what he was thinking. And this... See, that's the part of her ruling that, I mean, one part of her ruling that troubles me is that she goes back and says, oh, it was always subject to a proper foundation. But what she changes is she now, in the second ruling, makes it clear that the only foundation that she would conclude is proper is the testimony of Dr. Pardardman. Isn't there other testimony that could have laid that foundation? And why isn't it relevant regardless of whether Dr. Pardardman, I'm saying this wrong. Pat Worden. Pat Worden testified. And there's certainly, it would seem that it goes to the question of his intent to defraud and his intentionally bringing the misbranded drugs in. Your Honor, the way this law, this area of law is, is that if you want to put on an expert to talk about how feasible the defendant's reasoned state of mind was, there has to be some evidence that that was his state of mind. I mean, think about it. It's like putting the cart before the horse. And all of their cases are like that. But suppose you brought in another doctor to say, Doctors, especially doctors who have been trained in foreign countries and attended foreign medical schools, believe that it's proper to bring in foreign medicines that are the equivalent of FDA approved medicines in the United States. You know, that would present, it would be a closer case, certainly. But this was nowhere near that. This was your average, a criminal defense lawyer to come in and say, your average man on the street is confused about such and such. Not the average man. The public. Every single person in the world is confused, and Mr. Podwarden is a member of that group. Your Honor, can I give an analogy? No, no, no. But why isn't that? That evidence doesn't need any foundation. As long as a man is living and breathing and is a member of the public, and Egan was going to say everybody is confused by this, why is that not circumstantial evidence that he is confused? Because in the context of the real world. What you want him to do is to say, you've got to testify you were confused, give up your Fifth Amendment rights, and take the stand. No one said that he had to testify. Oh, you are. No, no. The judge said that his testimony as to personal confusion was the only acceptable foundation that could be laid for Dr. Egan's expert opinion. But the way that that particular case had shaped up, that was the only way that she could see that they could establish a foundation. As in all the cases. I think she's wrong about that. And plus, I mean, isn't that a violation of the Sixth and Fifth Amendment rights? She did advise him that there's no obligation to testify. Now, in these cases, if you want to put yourself. No obligation to testify, but if you don't testify, your expert witness can't come in. Your Honor, in these cases, if you want to put your state of mind out there. Did she say, did the judge say that? She did say that you don't have to testify, and she also said that the way her understanding of the way the evidence was shaping up was practically that was how you were. No, she didn't say practically. She said only the testimony of Dr. Warden would be a sufficient foundation for Dr. Egan's testimony. Your Honor, if you look at the case law. Did she say that? Yes or no? Functionally, yes. Functionally, essentially, basically, yes. That's what she said. But, Your Honor, if you look at the case law, the case law says that. If you're going to try to put in the record for the submission to the jury, look, this is what I was thinking. This was going through my head. And you don't have any. Wait, what case law says that? What all of the cases submitted by the defense on this point, except for the unpublished district court opinion, the defendant testified. And after the defendant testified, the defense put on an expert to say, yeah, what he was thinking is not out in left field. What he was thinking is plausible. In this case, they're trying to, it will be the equivalent, Your Honor, if a tax defendant comes in. And he says, he files a false tax return. And they go to trial, and he says, the fact that I submitted a false tax return is some evidence, some circumstantial evidence that I was confused about if that was appropriate or not. In every case like that, if you follow their logic, the defense can bring in a tax expert to say, yeah, you know what, a lot of people think that. A lot of people may be confused about that. Your Honor, that can't be the law. I mean, and that's what these cases bear out, is that if you want to put your state of mind out there and have the jury decide whether it's plausible or not, they have to think that was your state of mind. And there just, there was nothing there for that. I mean, yeah, he was able to get them through customs. True. Yeah, there is this personal importation policy. True. But does that mean that we know he was confused or that he was confused for X, Y, and Z reasons? None of that was in the evidence. Well, you know, I don't really believe it either, but I'm just wondering whether it shouldn't have been allowed and then you could have ripped it apart in cross-examination. It created a great risk of confusion of the issues, mixing things up, spending time on it. Did you make a 403 motion on that? Yeah, part of our motion was 403. And did she make some findings as to the confusion? I don't think she specifically... Did she make any findings as to the amount of time that will be taken up? She didn't specifically discuss it. No, I don't think so. But, I mean, at the end of the day, 403 is relevance versus all the other factors, and she basically said she was going to follow it. She should make findings on each one of those elements. Well, you don't have to. And just to respond to some of the issues that appellant counsels raised, Judge Pragerson was asking about the statutory scheme and so forth. Do you have her order? Yes, it's in the record, Your Honor. Okay, let's go for a re-reading. Do you want the first one or the second one? The second one. Well, the one where she ruled. Read both of them. Okay, I'm going to pull it out of the excerpt of the record. Okay. I think excerpt of record, page 88, contains some of the Court's comments during the hearing on the motion, where she initially expressed, you know, concerns and doubts about the government's motion to exclude Mr. Egan. And she concluded that by saying, I may limit some of the testimony, but I'm still inclined to deny the motion. There may be some issues that I'm persuaded. There may be a lack of foundations. But on the whole, I'm inclined to deny the motion. So we would submit that that is not the sort of slam-dunk motion denied that the defense is making that out to be and trying to justify their reliance on it. And then during the trial, when the government filed its motion, the Court ---- Did she say anything about, I will revisit this matter if it is raised again in trial? No, she did not, Your Honor. So why can't the defense say, hooray, we won the motion? She says, I'm inclined to deny the motion. Because the general rule is that rulings on motion in limine are not final. They're always subject to ---- They're never right. But he can rely on that motion when he makes his opening statement. To his own risk, Your Honor. And as the Court pointed out, that as a matter of trial tactics, doing that bears some risk. And we would also submit, Your Honor, this was not the whole opening statement. It was a long opening statement. They talked about numerous things. This was a fairly short portion of that. And also, Your Honor, on this point, most of what the defense claims that they couldn't get into, that they were hamstrung from getting into, they got into. They talked a lot about the ---- They questioned witnesses about the personal importation policy. They argued the personal importation policy. They got deep into that. So to suggest that there's this prejudice because they weren't allowed to talk about their defense, we submit is not borne out by the trial record. The Court also ordered the government not to mention their failure to call Mr. Egan in closes, which they didn't, which we didn't. As a matter of fact, after the reference to Mr. Egan in the defense opening statement, the whole rest of the trial, not one reference to Mr. Egan. But the subject matter of what they talked about that opening was the defense's case. They questioned the witness about it. They argued about it. They put that in front of the jury, and the jury convicted Dr. Pat Wharton. Do you have a citation to the case where motions in limine are considered tentative? Yes, Your Honor. If you just give me a moment, I'll pull it out of my brief. OHLER versus U.S., 529 U.S., 753. District Court has broad authority to reverse its earlier rulings, including rulings on motion in limine. Loose versus United States, also a U.S. Supreme Court opinion, 469 U.S., 38. Those are the two cases that we cited in our brief. Was the first one a circuit? No, they're both U.S. Supreme Court. They're both U.S. Supreme Court cases. Yes. So I have 35 seconds left. Let me see if there's anything else I want. No, you're over 38 seconds. You're in the red. Okay, Your Honor. Excuse me. Your Honors, I know I used all my time. I misrepresented something accidentally in the record, and I just want to clarify. When Judge Pragerson asked about my client, whether or not my client declared the medications, we don't know that. There is no evidence of whether or not those medications were declared. The government did not have any records, apparently. So I misremembered. As appellate counsel, I am very sorry to have done that, but I know that was an important issue. And I may have also, just so it's clear, the supervising agent testified that in the vast majority of secondary searches, all bags are searched. So with that clarification, I would only like to just mention one thing about the testimony. I'm sorry, about the trial court's ruling. There's a written ruling on the in limine motion at page 67 of the excursive record is the ruling. It's a very clear ruling that the testimony would be allowed, despite the government's objections. And finally, the only thing I would add is that there was additionally, there was circumstantial evidence of Dr. Padwarden's state of mind, and that was in the form of his openly and not attempting to hide the medications when they came through. They were not concealed in the luggage. He never told anybody that he worked with to conceal the medications when they brought them into the country. They were kept openly at his office. The receipts and information were given to, I believe, his accountant who was responding at one point to an IRS audit. He always acted as if he believed. So in the theory that actions speak louder than words, that circumstantial evidence of his belief, we believe, is certainly entitled to equal dignity, at least for foundational purposes, as if he were to have testified. Thank you. All right. Mark, can I just respond to something new that Alan's counsel raised? Three sentences. All right. Go ahead. Thank you. The overwhelming evidence at trial was that he never disclosed any of those drugs. And that's laid out in the sites of the record or in our brief. He never declared those drugs to customs during his many, many trips over the years. And that's laid out in the record. And I'm happy to elaborate if the Court wishes. Where in that record is that? You said he didn't disclose. Do you agree that he had three secondary inspections, and during the inspections, customs agents can't open his bags? They can, Your Honor, yes. Did they? It's not clear. It is clear the defendant specifically lied to one of the officers during one of those inspections. All right. Your Honor, the sites of the record with respect to his failure to disclose, his failure to declare, that is. All the sites in there start at subsection C of page 9 of the government's answering brief. In particular, you'll see in the area of the 170s, 180s, and 190s of the government's excerpts of records, there's information on this point. There's also some information. Why don't you write all that down?
judges: Pregerson, Wardlaw, Bea